Filed 12/22/20  P. v. Ussery CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARVIN LANE USSERY,<br><br>    Defendant and Appellant. | C088376<br><br>(Super. Ct. No. 18FE009975) |

After a jury found defendant Marvin Lane Ussery guilty of burglary, misdemeanor evading a peace officer, and misdemeanor unlawful possession of burglary tools, the trial court sentenced him to an aggravated six-year term in state prison, followed by a consecutive term of one year in county jail.  The trial court also imposed various costs, including separate restitution fines for each offense.  On appeal, defendant contends:  (1) his sentence for possessing burglary tools should be stayed pursuant to Penal Code

1

section 654,[1] because that offense was incidental to the commission of the burglary; (2) the trial courted erred by imposing separate restitution fines for each of his three offenses, rather than a single fine for the case, as required by the language of section 1202.4, subdivision (b); (3) the trial court violated due process and Eighth Amendment principles when it imposed various costs without first assessing defendant's ability to pay; and, (4) the abstract of judgment and sentencing minutes should be corrected to reflect the trial court's oral pronouncement of sentence.

We agree with defendant's last claim and will remand for the trial court to address the situation. Regarding defendant's section 1202.4 claim, we agree that imposition of multiple misdemeanor restitution fines was unauthorized, but hold that imposition of one fine for defendant's felony offense and one for his misdemeanor offenses is appropriate. Accordingly, we will amend the judgment by striking one of the misdemeanor restitution fines.

We affirm in all other respects.

## I. BACKGROUND

At about 3:08 a.m. on May 19, 2018, defendant and his accomplice broke into a gas station convenience store in Folsom, California, and took merchandise worth more than $2,500.

About seven minutes later and 100 feet away, Brian Ortega, an off-duty security guard, was walking through the parking lot of an apartment complex when he decided to shine his flashlight in the direction of a strange sound, "[l]ike a chain-link fence kind of hitting . . . metal." When Ortega shone his flashlight, he saw defendant with bolt cutters just outside the complex's fence. When Ortega asked defendant what he was doing, defendant "[t]old [Ortega] to get the fuck out of there."

_____

[1] Further undesignated statutory references are to the Penal Code.

2

Ortega said to defendant, " 'you need to stop what you're doing and get out of here or I'm going to call the police.' " Defendant sarcastically replied, " 'Hey, thanks for the light.' "

After Ortega told defendant he was calling the police, he heard the sound of "the bolt cutters kind of shrugging away from fence," and saw defendant enter a truck and drive away with another man.

Later, after defendant ran a stop sign in his vehicle and ran away from a law enforcement officer who ordered him, at gunpoint, to lie on the ground, police found in defendant's truck the gas station's stolen merchandise, bolt cutters, and a large pry bar.

A July 2018 information charged defendant with second degree burglary (§ 459—count one), misdemeanor evasion of a peace officer (§ 148, subd. (a)(1)—count two), and misdemeanor possession of burglary tools (§ 466—count three). The information also alleged that defendant suffered two prior robbery convictions, both qualifying as serious felony convictions or "strikes." (§§ 667, subds. (b)-(i), 1170.12.)

Defendant testified in his own defense at trial, denied any involvement in the convenience store burglary, and insisted that he was not the man who Ortega saw with the bolt cutters. He further testified: The stolen merchandise found in his truck belonged to a stranger that he picked up off the street moments before the police stopped him; he used the bolt cutters found in his truck to cut locks and chains in connection with his recycling business; and he used the crowbar found in his truck to open the hood of his truck because the latch on the hood was broken.

Regarding the burglary tools charge, the trial court instructed the jury as follows: "To prove the defendant is guilty of this crime, the People must prove that, one, the defendant possessed a pick-lock, crowbar . . . or other instrument or tool; and two, when the defendant possessed such a tool or tools, he did so with the intent to break into a building."

In closing statements to the jury regarding the burglary tools charge, the prosecutor argued defendant was guilty because a pry bar "was used" to enter the convenience store, and defendant "was . . . seen, with the[] bolt-cutters trying to break the lock off of a gate, a gate that did not belong to him."

The jury found defendant guilty of all charges.

On November 2, 2018, after finding beyond a reasonable doubt that the prosecution established a prior robbery conviction, the trial court sentenced defendant as follows: for count one, the burglary, six years in state prison (the upper term, doubled for the prior strike); for count two, the evasion offense, "one year in county jail, to run consecutive"; for count three, the burglary tools offense, six months in county jail to "run concurrent to the six years in state prison."

Regarding the sequence of defendant's incarceration, the trial court declared: "So it will be six years in state prison, followed by one year in county jail, consecutive. And that one year in county jail will be straight time and no early release, no alternatives."

Regarding costs, the trial court ordered: victim restitution of $2,570 (§ 1202.4, subd. (f)); a restitution fine of $1,200 (§ 1202.4, subd. (b)); a stayed parole revocation fine of $1,200 (§ 1202.4, subd. (b)); a $453.62 jail booking fee (Gov. Code, § 29550.2); and a jail classification fee of $90.65 (Gov. Code, § 29550.2). The trial court said those costs were "all for [c]ount 1."

The trial court further ordered restitution fines of $300 for the two misdemeanor counts.

Defendant made no argument or objection regarding costs.

Though the trial court did not orally impose the costs, both the abstract of judgment and minute order from the sentencing hearing reflect imposition of a court operations fee of $120 (§ 1465.8), and a conviction assessment fee of $90 (Gov. Code, § 70373).

4

Regarding credits, the trial court said defendant had "155 days of raw time, so with good time/work time, that adds up to 309 days . . . credit for time[ ]served."

Both the abstract of judgment and a minute order from the sentencing hearing indicate the custodial credit was to be applied to the county jail term.

Further, the abstract of judgment indicates that defendant was to serve his county jail sentence before his prison sentence.

Defendant timely appealed.

## II. DISCUSSION

A.    *Section 654*

Defendant argues his sentence for possessing burglary tools should be stayed pursuant to section 654, because the crime was "incidental to the commission of the burglary." Specifically, defendant argues "[a] reasonable inference, given the proximity of the apartment complex to the site of the burglary, is that the bolt cutters were being used to cut the fence and facilitate the escape from the burglary."[2]

The People disagree, arguing defendant "had the opportunity to reflect on his criminal possession of burglary tools" before he used them a second time "to try to cut through an apartment complex gate," and afterwards, when the tools "remained in . . . his" vehicle. Thus, "it was a reasonable inference that [defendant] retained ongoing possession of the tools to commit more felonious breakings."

We conclude substantial evidence supports the trial court's implicit finding that defendant had independent objectives for the convenience store burglary and the possession of burglary tools at the apartment complex fence. Accordingly, we reject defendant's argument.

---

[2] The crime of burglary continues until the burglar reaches a temporary place of safety. (See *People v. Wilkins* (2013) 56 Cal.4th 333, 348, fn. 4.)

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The statute does not prohibit multiple convictions for the same conduct, only multiple punishments. (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "In such a case, the proper procedure is to stay execution of sentence on one of the offenses." (*Ibid*.)

"In any section 654 inquiry, the court must initially ascertain the defendant's objective and intent. [Citation.] ' "If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." ' [Citation.] 'Whether the defendant maintained multiple criminal objectives is determined from all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it.' " (*People v. Tom* (2018) 22 Cal.App.5th 250, 260.)

If the trial court does not stay a sentence pursuant to section 654, and offers no factual basis for its decision, we presume the court found that the defendant harbored a separate intent and objective for each offense. (See *People v. Duff* (2010) 50 Cal.4th 787, 796 [imposition of concurrent sentences is precluded by section 654]; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1147.)

Here, because the trial court did not stay the sentence for possession of burglary tools, we presume the trial court found defendant had independent objectives for committing those two crimes.

In *People v. Gibson* (1949) 94 Cal.App.2d 468, 469-470 the court affirmed an attempted burglary conviction, rejecting defendant's challenge to the sufficiency of the evidence, as defendant "was detected by an officer at midnight bearing a ladder down a

6

dark alley and placing it at the rear of a department store" and was "equipped with all the tools commonly used by burglars," including a sledge hammer and wire cutters (*id.* at p. 472).

Here, around 3:15 a.m., minutes after defendant burglarized a gas station convenience store nearby, he was observed holding bolt-cutters that were touching the fence of an apartment complex. In light of *Gibson*, this is substantial evidence supporting the trial court's implied factual finding defendant, while possessing the bolt-cutters at that moment, had a different criminal objective from the convenience store burglary; the intent to burglarize *again*. Specifically, the intent to burglarize an apartment in the complex on the other side of the fence.[3]

Accordingly, defendant's argument is unpersuasive.

B.      *Restitution Fines*

Next, defendant argues the trial court erred by imposing separate restitution fines for each of his three crimes, because section 1202.4, subdivision (b) authorizes a restitution fine only once per "case."

The People disagree, arguing our reasoning in *People v. Holmes* (2007) 153 Cal.App.4th 539 (*Holmes*) teaches that "it was appropriate" for the trial court to order "separate restitution fine[s] for [defendant's] misdemeanors." Further, the People state that "[t]o the extent the trial court ordered a separate fine for each misdemeanor count rather than simply ordering one fine for both counts, no remand is necessary," because the court "simply divided the misdemeanor fine between the two misdemeanor counts, rather than aggregating the amount."

---

[3] This section 654 finding was not inconsistent with the prosecutor's closing argument. (Cf. *People v. Siko* (1988) 45 Cal.3d 820, 826 [sentencing court could not make section 654 findings for which there was "no showing that" defendant's crimes were "understood in this fashion at trial," given the instructions and closing arguments].)

In his reply brief, defendant does not address *Holmes*, but argues that, "[e]ven if" the trial court properly could have imposed "a separate restitution fine for the misdemeanors, it lacked the statutory authority to impose separate $300 restitution fines for each misdemeanor count."[4]

Section 1202.4, subdivision (b) provides:

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record.

"(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000). If the person is convicted of a misdemeanor, the fine shall not be less than one hundred fifty dollars ($150) and not more than one thousand dollars ($1,000).

"(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

In *Holmes*, the trial court sentenced the defendant to prison for a felony conviction and he received probation for a misdemeanor conviction. The trial court imposed restitution fines for both the felony and misdemeanor convictions; $400 and $100 respectively. (*Holmes, supra*, 153 Cal.App.4th at p. 541.) Additionally, the defendant

---

[4] Also, in his reply brief, defendant argues that section 654 is the "other reason that the court erred in imposing a separate restitution fine for [c]ount [t]hree." But, as we have already concluded that section 654 did not preclude multiple punishments in this case, this argument is unavailing.

8

received a parole revocation restitution fine of $400 pursuant to section 1202.45 and a probation revocation restitution fine of $100 pursuant to section 1202.44. (*Holmes, supra,* at p. 541.)

Although we agreed that generally "a restitution fine is not imposed on '*each count*' but instead one fine is imposed taking into account all the offenses in the proceeding," (*Holmes, supra*, 153 Cal.App.4th at p. 547) we ruled the trial court "could not impose a restitution fine . . . to cover both the felony and the misdemeanor because the parole or probation revocation restitution fine had to be in the same amount" (*id.* at pp. 547-548). Accordingly, we concluded "the trial court did not err in imposing the restitution fines separately for the felony and misdemeanor." (*Id*. at p. 548.)

Here, particularly in light of defendant's silence on the applicability of *Holmes*,[5] we agree with the People that *Holmes* applies to this case, and therefore the trial court did not err in imposing multiple restitution fines where defendant was convicted of a felony *and* misdemeanors.

But we agree with defendant that the record reflects the trial court's imposition of $300 restitution fines for *each* misdemeanor count.[6] *Holmes*—where we faced one felony conviction and one misdemeanor conviction—has nothing to say about this scenario.

We conclude the trial court's imposition of multiple restitution fines for multiple misdemeanor convictions was unauthorized in light of section 1202.4, subdivision (b)'s

---

[5] Cf. *People v. Nguyen* (2017) 18 Cal.App.5th 260, 270 ["deem[ing]" appellant's silence vis-á-vis an argument in respondent's brief "to be acquiescence" to respondent's position].

[6] The People's characterization of the record—that the trial court performed a counterintuitive calculation by settling on an aggregate misdemeanor fine, and then (without saying so) dividing that fine by two—is unpersuasive.

language.  Accordingly, we will modify the judgment by striking the $300 restitution fine for count three.

*C.     Ability to Pay*

Defendant argues the trial court violated due process and Eighth Amendment principles when it ordered him to pay "more than three times the statutory minimum restitution fine under section 1202.4 without first assessing [defendant's] ability to pay." Relatedly, defendant further contends the trial court violated state and federal due process principles by failing to hold an ability to pay hearing before imposing the jail fees, court funding assessments, and restitution fines.  Anticipating the People's argument these claims are forfeited by defendant's failure to raise it at sentencing, defendant maintains these claims are not forfeited, because for some claims the failure to object was ineffective assistance of counsel, and regarding the mandatory court assessments, "existing law did not support" the relevant challenge.

The People argue these claims are forfeited and that the claims fail on the merits.

We need not decide whether defendant forfeited his ability to pay arguments because they are without merit.  Failure to assert a meritless position does not demonstrate ineffective assistance of counsel.  (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

Defendant's due process claim hinges on the analysis in *People v. Dueñas* (2019) 30 Cal.App.5th 1157, finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded this analysis is correct.  Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4.  (*Kopp, supra,* at pp. 95-96.)

10

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Defendant's claim pursuant to *Dueñas* is without merit, invalidating his ineffective assistance of counsel claim on this issue.

Similarly, defendant's Eighth Amendment excessive fines clause claim is without merit.

"The Eighth Amendment prohibits the imposition of excessive fines. The word 'fine,' as used in that provision, has been interpreted to be ' "a payment to a sovereign as punishment for some offense." ' [Citation.]" (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1040 (conc. opn. of Benke, J.) (*Gutierrez*).) The determination of whether a fine is excessive for purposes of the Eighth Amendment is based on the factors set forth in *United States v. Bajakajian* (1998) 524 U.S. 321 [141 L.Ed.2d 314] (*Bajakajian*). (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728-729 [applying Eighth Amendment analysis to both defendant's federal and state excessive fines claims].)

" 'The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. [Citations.] . . . [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.' (*Bajakajian, supra*, 524 U.S. at p. 334.)

"The California Supreme Court has summarized the factors in *Bajakajian* to determine if a fine is excessive in violation of the Eighth Amendment: '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the

11

penalties imposed in similar statutes; and (4) the defendant's ability to pay. [Citations.]'
(*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co., supra*, 37 Cal.4th at p. 728; see
*Gutierrez, supra*, 35 Cal.App.5th at p. 1040 (conc. opn. of Benke, J.).) While ability to
pay may be part of the proportionality analysis, it is not the only factor. (*Bajakajian,
supra*, 524 U.S. at pp. 337-338.)" (*People v. Aviles, supra*, 39 Cal.App.5th at p. 1070.)
We review the excessiveness of a fine challenged under the Eighth Amendment de novo.
(*Id*. at p. 1072.)

Here, we find that the modified combined amount of $1,500 in restitution fines
imposed for burglary and obstructing a peace officer is not grossly disproportional to the
level of harm and defendant's culpability in this matter, particularly in light of
defendant's recidivism. Having previously been convicted of robbery, defendant stole
merchandise valued at over $2,500 from a convenience store and then evaded a police
officer attempting to detain him, running a stop sign with his vehicle, and ignoring an
officer's orders to lie down while the officer was pointing a firearm at him. The societal
harm and danger caused by defendant's conduct was not minimal, and therefore
imposition of restitution fines above the statutory minimums (and very far short of the
maximums) was not improper. Accordingly, the amended $1,500 restitution fine
imposed in this case is not excessive under the Eighth Amendment.

Because defendant's Eighth Amendment claim is without merit, his ineffective
assistance of counsel claim on this issue fails.

D.    *Abstract of Judgment*

Finally, defendant claims the abstract of judgment and sentencing minutes should
be corrected to reflect the trial court's oral pronouncement of sentence. Specifically,
defendant contends the abstract of judgment: (1) does not reflect the trial court's order
that defendant serve six years in state prison, and *then* a consecutive term of one year in
county jail; and (2) improperly reflects "0" credits to be applied to defendant's prison
term, despite the trial court's award of 309 days of credit.

The People "agree[] that the minute order and the [a]bstract of [j]udgment should be modified to correctly reflect the oral pronouncement of judgment."

We agree with the parties that the abstract of judgment does not reflect the trial court's oral pronouncement and will remand for the trial court to address the situation.

Here, item 14 of the abstract of judgment indicates that defendant has "0" credits for time spent in custody because "credits applied to CT 2 CJ misd." And item 15 of the abstract of judgment indicates defendant is to be sent to state prison "following time to be served in [c]ounty [jail] for misdemeanors."

We agree with the parties that item 15 directly conflicts with the trial court's oral pronouncement that defendant was to serve his time in state prison *first*. We also agree that, because the trial court was *silent* regarding the term of incarceration to which the custody credits were to be applied (prison or county jail), item 14 is in tension with the oral pronouncement.

Given this state of the record, and in light of the distinct possibility that defendant has already served part of his sentence in a manner that is inconsistent with the trial court's oral pronouncement, we think the proper remedy is to remand to the trial court to address the situation. (Cf. *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1254 [explaining that a trial court "is considered to be in the best position to conduct" resentencing hearings, and observing that a "preference for a judge who is well informed about the case serves the interests of both parties, and an alternative practice would impose heavy burdens on scarce judicial resources"]; *People v. Salazar* (1994) 29 Cal.App.4th 1550, 1557 [remanding to the trial court "because it is in the best position to determine whether it correctly calculated the credits to which appellant was entitled"].)

Further, though the trial court did not orally impose them, we will modify the judgment to impose the mandatory court operations fee of $120 (§ 1465.8) and conviction assessment fee of $90, as currently reflected in the abstract of judgment. (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1415.)

13

### III.  DISPOSITION

The judgment is modified to strike the $300 restitution fine for count three and to impose the mandatory court operations fee of $120 and conviction assessment fee of $90. The matter is remanded for the trial court to address the discrepancy between its oral pronouncement and the abstract of judgment.  The clerk of the trial court shall send copies of any amended abstract of judgment to the relevant authorities.

In all other respects, the judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

HOCH, J.

14